Jones, J.
In this court the chief reliance of the plaintiff in error is that the court of appeals committed error in refusing to admit testimony in support of the second- and third defenses in the defendant’s answer, and further that, upon the conceded facts in the case, the judgment should be in its favor for the reason that, by the notice of March 28, 1912, the license contract was at an end under the provisions thereof, and that it is thereby relieved from any further obligation to pay royalties according to its terms.
The license agreement provided that the licensee was to furnish an accounting on or before the tenth day of each calendar month of the number of Master Vibrators sold by it during the preceding calendar month. Prior to March 10, 1912, the Ignition Company had paid the royalties due for vibrators manufactured between February 20, the date of the contract, and March 1, 1912. On March 28, 1912, the Ignition Company, pursuant to the provisions of the license agreement, gave the Coil Company notice by registered mail of its intention to surrender and terminate the contract. This notice was received by registered mail in due time by The Unit Coil Company. Other than the royalty payments accruing on March 1, 1912, no further payments of royalty were made by the Ignition Company.
The plaintiff in error claims that the license agreement was terminated by the giving of the notice on March 28, 1912. On the other hand it is contended by The Unit Coil Company that under the provisions of that agreement the surrender *134 and termination did not Occur until thirty days after such notice. It is urged by the plaintiff in error that the clause of the agreement relating to the payment of royalties was an independent covenant, entirely dissociated from the clause of surrender and termination, thus leaving the plaintiff in error, under the terms of that agreement, the right to terminate it upon the giving of notice and permitting action for royalties thereon to be brought' as a condition subsequent to the surrender.
We are unable to concur in this view. The parties to this agreement provided as a condition precedent that the surrender and termination depended upon two things: First, that no suits at law or in equity were pending which had been instituted by the licensee in the name of the licensor, and, second, that’at the time of such surrender and termination all royalties due under the agreement should be paid. Under the provisions of this agreement the notice did not have the effect so instanti of terminating the agreement, for the licensee still had the right of manufacture and sale of Master Vibrators for thirty days thereafter, and all of the obligations of the licensor and licensee continued under that agreement until the expiration of the thirty-day period. Not only was this purpose expressed in the agreement itself but that was the manifest intention of the parties thereto, as evidenced from other portions of the license agreement. The number of Master Vibrators manufactured and sold were known only to the Ignition Company until an accounting *135 was had under the provisions of the contract, and it was evidently the intention of the parties that all obligations under the license contract, including the full payment of royalties, should cease at the time of the surrender of the license. That the period of termination was thirty days after notice and not at the time of giving notice is manifested by a provision elsewhere in the license agreement providing' that the termination of the license should not “release the licensee for its obligation to pay royalties for the periods prior to such termination.” This clause was evidently intended to cover all royalties due, including royalties between the time of notice and final surrender.
We are, therefore, constrained to hold that under the provisions of the contract the surfender and termination did not occur until thirty days after the giving of notice and upon the payment of all royalties accruing to the Coil Company at the time of final surrender.
The record discloses that the trial court refused to hear evidence in support of the second and third defenses of the answer, the former raising the question of the invalidity of the patent and the latter alleging that the agreement created a monopoly and was an illegal combination in restraint of trade. While the second defense pleads the invalidity of the patent and claims that it was covered by other patents issued by the government, the defense does not plead an eviction of the licensee by a decision of any competent tribunal. The claim of the defendant is that by reason of his answer alleging this invalidity the case became *136 one subject for federal and not state jurisdiction. State courts have no jurisdiction to try the question of the validity of a patent. Where such invalidity arises, incidentally involved as a question in the case, it does not necessarily divest the state court of jurisdiction. If the case is one arising 'out of a contract relating to a patented invention, and where, especially as in this case, the main issue to be decided is whether the relation of licensor and licensee subsists under such contract, the case is one for state- jurisdiction, where both parties reside in the same state.
If upon the record of this case the Coil Company conceded that it did acquiesce in the termination of a license agreement between it and the licensee, the case, of course, would become one for federal jurisdiction, and the licensee would be compelled to sue in that jurisdiction for infringement, for cases of that character are not cognizable in the state courts. But The Unit Coil Company, the licensor, plants its case upon the issue that the relation of licensor and licensee still subsisted and that the license contract was not terminated. If that issue should be found in its favor the state court had jurisdiction in the case. If that issue should be found against The Unit Coil Company, or if the latter company had conceded abandonment of the contract, in either event the. Cuyahoga county court could not retain jurisdiction to try the question of the invalidity of the patent or to take an accounting for royalties thereafter due under the license, for after termination the licensee would become an infringer and juris *137 diction -would be lodged in the federal forum. For discussion of-this principle see Victor Talking Machine Co. v. The Fair, 123 Fed. Rep., 424; Dale Tile Mfg. Co. v. Hyatt, 125 U. S., 46; Excelsior Wooden-Pipe Co. v. Pacific Bridge Co., 185 U. S., 282; Blakeney v. Goode et al., 30 Ohio St., 350.
But it is insisted that while the notice in question may not have been sufficient to terminate the license agreement in accordance with its terms, still, where the invalidity of a patent is plead as a defense, together with the fact that notice has been given to the licensors renouncing the patent agreement, this of itself furnishes a complete defense to an action upon the contract, and the licensee thereafter can become liable, if at all, only in an action for infringement in a federal court. The decided cases hold that where a licensee does claim and plead the invalidity of a license under which he manufactures and sells; and alleges further that under such claim he has served notice upon the licensor, he repudiates the license, the contractural relation is thereby ended, and he becomes liable thereafter for damages as an infringer and not for the stipulated royalties agreed upon in the license contract; or, in the event that no notice has been given by the licensee, he may refuse to carry out the stipulations of the license agreement in case of eviction by an adjudication of a proper tribunal, invalidating the patent. Marston v. Swett et al., 82 N. Y., 526; Mudgett et al. v. Thomas et al., 55 Fed. Rep., 645; The Macon Knit *138 ting Co. v. The Leicester Mills Co. et al., 65 N. J. Eq., 138.
While the second defense pleads the invalidity of the patent in question, the notice served on March 28, 1912, does not complain of any invalidity, but seeks to terminate the license because of the fact that the licensee was not protected against infringements of the patent by its competitors. The license agreement provided that the licensee had the right to bring and prosecute suits in the name of the licensor against any infringer of the letters patent, and the complaint made by the licensee in said notice was based upon the contractural right given the licensee for its protection under that contract; but there is still a stronger reason why the licensee, under the conceded facts, should be held as operating under the license. An examination of the license agreement shows that the licensee agreed “to mark all of its said Master Vibrators with consecutive numbers and also with the word ‘Patented,’ and the dates of said letters patent.” It develops from the record that after the notice of March 28, 1912, the licensee continued to utilize the patent marks of the licensor. On the trial the attorney for the Ignition Company admitted that the “defendant had manufactured and sold Master Vibrators such as are described in the license contract of February 20, 1912, subsequent to April 28, 1912, and that defendant had engaged in the manufacture and sale of said Master Vibrators continuously since March 1, 1912.”
And the record further develops that the president of the Ignition Company in August, 1914, *139 testified that these patent dates on the name plates had been utilized until about three months of the time he testified. It would indeed be anomalous to hold that the licensee could obtain the advantage he seeks by giving notice of his repudiation and yet withhold the advantage he gained under the license agreement by the use of the patent marks of this patentee. He could not be permitted to hold the fruits of his contract and at the same time repudiate it. This furnishes strong presumptive evidence that the licensee continued to operate under the license, and the court of appeals may have so found.
The gravamen of the third defense is that the purpose of this license agreement was to create a monopoly and that it was an illegal combination in restraint of trade. From the allegations of this defense it is not clear how this was brought about. There are not facts specifically stated which, in law, constitute either a monopoly or restraint of trade. The allegations are general and-are mere legal conclusions. There is no combination by which the price of patented articles is fixed for sale or resale, nor does there appear to be any indication in the defense that there should' be any suppression of the patent or any limitation in the manufacture and sale of Master Vibrators except by the- withdrawal of the Connecticut Telephone and Electric Company and other licensees of the defendant in error from such manufacture and sale during the period that the license agreement should be in force. Even if these allegations were true they would be merely tantamount to the revo *140 cation of the licenses theretofore granted by The Unit Coil Company, and thus would convey the exclusive right of manufacture and sale to the licensee, The K-W Ignition Company. This the licensor had the right to do in the first instance, and we see no reason why it cannot do the same as indicated in that defense. The allegation that all this was done in relation to an invalid patent does not aid the Ignition Company, for as. to it the patent is presumptively valid and was so recognized by it by acquiring its fruits as licensee.
We are unable, therefore, to conclude that the third defense is sufficient in law or that the trial court erred in refusing to admit testimony in its support.
The remaining ground of error is that The Unit Coil Company had an adequate remedy at law, and that it was not entitled to injunctive relief in this action.
The plaintiff had averred .by its petition that since March 1, 1912, many thousands of Master Vibrators, as plaintiff believed, had been manufactured and sold; that their number was unknown to the plaintiff by reason of the failtire and refusal of the defendant to render an accounting; that the sales thereof were widely distributed to persons unknown to plaintiff; that although the license agreement provided for monthly statements by the licensee and an inspection of its books, the licensee had refused to make such statements or permit its books to be examined. The petition also alleged that “the defendant marked, or caused to be marked the said Master Vibrator sold as afore *141 said with the word ‘Patented’ and the dates of the letters patent set forth in said written contract; and that defendant is now continuing to sell in such manner the said Master Vibrators.” Under this statement of the case the plaintiff below had no adequate remedy at law. Even upon the theory under which The K-W Ignition Company defended, if it were not operating under the license agreement then it" had no right to the continued use of the patent marks of the patentee and it should be enjoined. .For cases of this character see Stimpson Computing Scale Co. v. W. F. Stimpson Co. et al., 104 Fed. Rep., 893; Washburn & Moen Mfg. Co. v. Haish, 9 Biss., 141.
On the other hand, if it should be conceded that the licensee was still operating under the license agreement, the following cases hold as proper a decree similar to the one made by the trial court in the case at bar enjoining the further manufacture and sale until the payment of royalties under the license agreement: Eureka Clothes Wringing Co. v. Bailey Washing & Wringing Machine Co., 11 Wall., 488; McKay v. Smith et al., 29 Fed. Rep., 295; Ball Glove Fastening Co. v. Ball & Socket Fastener Co., 36 Fed. Rep., 309; Hat Sweat Mfg. Co. v. Porter et al., 34 Fed. Rep., 745.
It is often difficult to determine, from the adjudicated cases, any exact rule determining the right to invoke equitable jurisdiction; and in patent cases the federal decisions seem to be in considerable confusion. Some courts accord the equitable remedy in order to avoid multiplicity of suits; others, as above noted, to protect the special *142 patent monopoly by injunctive relief to prevent a licensee from operating in hostility to his contract. But there can be no controversy over the principle that where equitable jurisdiction once attaches, full relief, including an accounting, may be had in that action.
Since the abolishment by our code of the forms and distinction between actions at law and in equity, the trial courts have had full jurisdiction whether the case stated falls within either class. However, it is now too late for the plaintiff in error to question in this court the character of the relief. The record fails to disclose that the question was made in either of the lower courts. The Ignition Company answered to the merits, failed either to demur or demand a jury and thereby consented to trial by the nisi prius court. Losing there, it, by its appeal, confessedly recognized the equitable character of the case by invoking a trial de novo in the appellate court; and, failing twice on the merits, it now for the first time, and in this court, questions the equitable jurisdiction of the court which awarded judgment against it. This it cannot do. Culver v. Rodgers, 33 Ohio St., 537; Nicholson v. Pim et al., 5 Ohio St., 25.
The judgment of the court of appeals of Cuyahoga county is affirmed.

Judgment affirmed.

Wanamaker, 'Newman and Matthias, JJ., concur.