Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 1. We are satisfied that the agreements set up in the bill are the valid contracts of the defendant. Though the plaintiff was unable to produce any resolution or order in writing by the trustees or board of directors of the defendant corporation, and though the seal used was the private seal of one of its officers, instead of the corporate seal, neither of these is essential to the validity of the contract. We entertain no doubt that Rindge, the agent and one of the directors and treasurer of the Eureka Company, was authorized to execute the agreement, and if any doubt existed on that point, the report and payment for five hundred machines, the first month’s use of the patent under that agreement, would remove the doubt. If it did not, it would very clearly amount to a ratification.
 

 2. The defendant company furnished a sample of the machine they were making. That machine is before us. . We do not understand that it is seriously contended that this machine does not contain some part of the invention covered by the reissue of the Allender patent. . The effort of defendant is to show that it is not covered by the original patent to Allender. This latter point will be noticed presently. After making the agreement in this case, an agreement made on due deliberation, the defendant being engaged in the business of making the machines before it took the license, an agreement manifestly intended to adjust conflicting rights, and after furnishing one of the machines as a sample of what it proposed to do under that agreement, and after having made and sold five hundred of them, there arises a very strong presumption that the denial that any
 
 *492
 
 thing in those machines is covered by plaintiff’s patent is made to support an unwillingness to pay the royalty which it had agreed to pay. And we are not at all satisfied that, in equity, it can be permitted to set up this defence, while it makes no attempt by cross-bill, or even in the answer, to show that the agreements were, obtained by fraud, surprise, or imposition.
 

 But if this could be permitted, the testimony does not repel the presumption arising from the making of that contract and the defendant’s action under it, that the machines made by it do contain matter covered by the reissued patent of plaintiff.
 

 3. If the defendant means, by the very vague answer to the bill, to set up and to rely on a fraud by which the commissioner was misled and deceived and induced to reissue the patent, and that the plaintiff or. its assignors were the guilty parties, that question cannot be raised in this collateral proceeding, and can only be considered in some direct suit to impeach and set aside the patent.
 
 *
 

 But if it is meant merely to say that, in point of fact, the reissue embraces matter which was no part of Allender’s original invention, then there is no evidence in the record by which we can determine that question, for neither the original patent to Allender, or any part of it, or any of the reissues of that patent, except' the last, which is the one claimed to be wrongfully reissued, is in the record.
 

 4. Some attempt is made to assail the novelty of Allender’s invention, but as no notice was given of any such attempt, or of the witnesses or other evidence by which that charge was to be supported, it cannot be considered in this case.
 

 On the whole case we concur with the Circuit Court, and its
 

 Judgment is affirmed.
 

 *
 

 Rubber Company
 
 v.
 
 Goodyear, 9 Wallace, 788.