AMERICAN STREET CAR ADVERTISING CO. v. JONES et al.

(Circuit Court, N. D. New York.    May 13, 1903.)

No. 6,865.

1. PATENTS—CONSTRUCTION OF CLAIMS—ADVERTISING RACKS FOR STREET CARS.
    The Randall patent No. 380,696, for an advertising rack for street
cars, discloses invention, and is valid, and is not so limited by the lan-
guage of claim 1, making an element of the combination of such claim
"screws or equivalent devices for connecting the rack to the car," as to
restrict it to racks separately made and removably attached, but it cov-
ers as well racks constructed in all respects in accordance therewith, but
"built in" to the car when it is made.

2. SAME—SUIT FOR CANCELLATION OF LICENSE—EQUITY JURISDICTION.
    A suit in equity may be maintained for the cancellation of a license
which went into effect and was recognized by the parties, and to obtain
an accounting for royalties thereunder.

3. SAME—LICENSES—DURATION.
    A license not expressly limited in duration continues in force until the
patent expires or the license is forfeited, unless sooner terminated by
mutual consent; and, so long as the licensee continues to manufacture
the patented article, he is presumed to do so under the license, and is
liable for royalties thereunder.

4. SAME—SUIT FOR ROYALTIES—LACHES.
    Defendants paid royalties under a parol license until 1889. In 1895
the patentee assigned the patent to complainant, which had no knowl-
edge of the license until 1900, when the patentee assigned to it his claim
for past royalties, and, on refusal of defendants to pay, it at once com-
menced suit for an accounting. The patentee having died, complainant
could not show why suit had not sooner been brought by him, nor did
defendants, who had continued to manufacture the patented article, show
such reason, or that they were misled by his failure to sue.    Held, that
under such circumstances complainant was not barred by laches from
maintaining the suit.

In Equity.

The bill in equity filed in this cause asks that a license alleged to have
been granted by Isaac H. Randall, the then owner of the patent in question
herein, for the use of such patent, be terminated by the decree of this court;
that the defendants be compelled to render an account setting forth the
number of cars which they have made or caused to be made since the 8th
day of August, 1889, containing advertising racks made under said license,
however the same may have been incorporated in the said cars; that the de-
fendants be compelled to pay to the complainant all the unpaid royalty,
earned under said license and unpaid, at the rate of $3 per car (which he now
asks to make $5 per car).    The bill also demands such other and further
relief as may seem meet under the facts proved.

Edward S. Beach, for complainant.
Charles G. Coe, for defendants.

RAY, District Judge.    The complainant is the owner by due as-
signment and transfer of letters patent No. 380,696, dated April 10,
1888, for an advertising rack, granted to one Isaac H. Randall.    The
defendants are engaged at Watervliet, N. Y., in making and selling
street cars which contain, as complainant alleges, the patented inven-
tion constructionally as to claim 1, contributively as to claim 2, of
such patent.

The complainant alleges that defendants are making and selling under a parol royalty-bearing license granted by Randall, the patentee, to the defendants in the fall of 1888, and also alleges that the license has been in force continuously since that time, and is still in force. There are varieties of these patented advertising racks, one being the rack spoken of as "built in" racks because incorporated in a way into the side of the car, rather than attached thereto by hooks, screws, or nails, or otherwise; while another is spoken of as "removable" racks, being those so attached to the sides of the car. The complainant contends that all are, in fact, removable racks, and within the patent, and covered by the license; while the defendants contend that the "built in" racks are not covered by either the patent or license; and also contend that the license was only for the construction of about 20 cars, and terminated with their construction, and that the royalties have been paid in full, except as to a few cars containing removable racks, upon which the royalty would be about $80. Randall, in writing, duly assigned his back damages or claim for royalties to complainant June 12, 1900, and same was duly recorded. The granting of the alleged license is denied in the answer, but the defendant John H. Jones, when examined by the complainant's counsel, testified: "Q. Randall consented to your use of his said patented invention [referring to the patent in question] in cars made and sold by you, did he not, on payment of a royalty or patent fee by you to him? A. Yes."

For the purpose of establishing the existence of the license alleged, a large number of letters were put in evidence that passed between Randall and the defendants relating to the use of these racks in street cars, the royalty charged and to be paid, and also showing payments. It is not necessary, and would not be profitable, to recite these letters, or the evidence relating thereto. This court is satisfied from the evidence that the license alleged has been proved by a fair preponderance of evidence, and that same has not been legally revoked or ended, and that defendants have continued to construct street cars containing this advertising rack ever since the license was given. The real and important claim of the defendants is, and for a long time has been, that these so-called "built-in" racks are not within or covered by the patent in question, and that the defendants have not been and are not liable to pay royalty on cars containing them. In support of this contention defendants refer to the terms of the patent itself, and assert that it is so limited that it does not cover these racks when built in. They also refer to a decision of the United States Circuit Court of Appeals for the First Circuit, decided October term, 1897, between Newton Street Railway Company, defendant (appellant) and American Street Car Advertising Company, complainant (appellee) (32 C. C. A. 122, 88 Fed. 795), on appeal from the Circuit Court for the District of Massachusetts, in which this question was in issue in reference to claim 1 of this very patent, and in which that court, reversing the Circuit Court, held:

"While we entertain doubts whether the complainant's device involves invention or patentability, yet, admitting that both were found in it, the patent must be held so close and narrow that it is not infringed by a structure that

cannot be described in the language of the patent as 'an article complete in itself adapted to be readily attached to the car at the place specified,' or, in the language impressed upon the Patent Office, a rack 'complete and in condition to receive the cars when not fastened to the car.' We are clear, therefore, that the respondent's structure does not infringe. The decree of the Circuit Court against this appellant, the Newton Street Railway Company, is reversed, and the case is remanded to that court, with directions to dismiss the bill, with costs, the appellant to recover the costs of this court."

Judge Putnam's opinion at the Circuit was as follows:

"The question of infringement presents no difficulties. The only possible ground of defense with reference to this branch of the case is the proposition that the patent covers only a portable rack, complete in itself, while the alleged infringing device is a part of the structure of the car. That this proposition does not address itself to the intelligent, practical mind acquainted with the art is plain from the reference we have already made to the specifications for building the cars. They describe the device as the Randall patent rack, although to be built in. Construing strictly, as we must under the circumstances, the complainant's claim in issue, yet every element of it is found in the cars of the respondent corporation. If, in drawing its specifications, it had intended to accomplish what would not infringe the patent by requiring that the rack should be built into the car, this would have been clearly only an attempted evasion; but the case does not show that it had any such intention. The manner in which it framed its specifications indicates that it intended and understood that it was to obtain the complainant's device, whatever may have been the intention or understanding of the parties who built the cars which the respondent corporation operates."

It is reported 82 Fed. 735.
The claims of the complainant's patent are as follows:

"(1) An advertising rack adapted for use in a street car, consisting of the body, A, having a continuous concave face, and longitudinal moldings along the edges thereof, having grooves, c, adjacent to and in substantially the same plane as the concave face of the body, in combination with screws or equivalent devices for connecting the rack to the car engaging with the moldings outside the grooves therein, substantially as and for the purpose set forth.

"(2) An advertising rack adapted for use in a street car, consisting of a back, A, having a continuous concave face and longitudinal moldings connected by the back, and rabbeted to form longitudinal grooves immediately adjacent to the concave face of the back, and detachable and adjustable elastic strips, F, adapted to be sprung into said grooves and to cover the adjacent edges of the signs held in the rack, substantially as described."

In the specifications forming a part of said letters patent we find the following:

"It has been the custom to place advertising cards in street cars at the corners formed by the roof and sides of the car. These cards have heretofore been simply tacked to the roof and side of the car, or held in place at each of said corners by means of two longitudinal strips, one fastened to the framework of the roof and the other to the framework of the side. My invention consists in an article styled an 'advertising rack,' constructed and applied at either of said corners, as hereinafter set forth, into which the cards may be conveniently placed, and from which they may be readily removed, the rack being an article complete in itself, adapted to be readily attached to the car at the place specified, where it will exhibit the cards therein in an attractive manner.

"In the drawings, Figure 1 shows so much of a transverse section of a car provided with advertising racks of my invention as is necessary to show their location and the manner of attaching them to the car. Fig. 2, drawn on a larger scale, is a front view of a portion of a rack having cards therein,

and Fig. 3 is an end view of the same. Fig. 4 is a section of the rack taken on line l l in Fig. 2. Fig. 5 shows one of the transverse or binding strips.

"The body, A, of the rack consists of thin material, and is of suitable width to be applied at the corner formed by the side, B, and roof, C, of a car. I prefer that said material be deal, a, having cloth, b, glued upon the back to stay the same. Other material may be used, as sheet metal or woven wire. I prefer, also, to have the body of the rack curved, as shown, so as to present a concave surface to the front; but it may be of greater or less curvature than shown, or even flat.

"The body, A, should form a practically continuous and even backing to support cards, however thin and of any required size, when held against the same, so that they will not be wrinkled and may not be accidentally displaced.

"At each of the upper and lower edges is a longitudinal strip, D, which is preferably of wood, and formed as an ornamental molding. The inner edge of each strip, D, is rabbeted or recessed, so as to form a longitudinal groove, c, having its inner edge adjacent to and in substantially the same plane as the curved face of the back.

"The advertising cards, E, are placed as desired in the rack by springing the upper and lower edges into the grooves, c. Transverse elastic strips, F, which are preferably of sheet metal, are then placed in the rack by springing their ends into the grooves, c. These strips, being placed over the edges at the sides of the cards, form a neat framing for the same, and tend to bind the cards closely against the surface of the body of the rack.

"The racks are fastened to the car preferably by means of screws at d, which extend through the longitudinal strips, D, into the framework of the roof and sides of the car, as shown. These screw holes are beyond the outer edge of the grooves, c, so that, when put up, the fastening devices do not interfere with or impede the ready insertion of the cards or their movement in the grooves after they have been placed.

"I am aware that it has been proposed to use a plate having a convex front surface and its edges bent over to form lips to retain alterable signs, and having its ends extended beyond said lips or turned over edges to provide means for fastening the plate; but such signs must be comparatively small, and are not adapted for advertising purposes in street cars, as they cannot be secured and supported intermediately of their ends, since, should fastening devices, as nails or screws, be passed through the edges of the plate, they would prevent the signs being freely slipped into place.

· "I am also aware that it has been proposed to use racks for holding advertising cards in street cars, such racks consisting of slitted tubes or bars extending lengthwise of the car near the roof, said bars being held apart by curved braces arranged at suitable distances apart along the slitted bars, but offering no support to the advertising cards, which were held by having their edges inserted into the slits in said bars; and I am further aware that it has been proposed to make a card-holding device for street cars, consisting of a grooved molding attached to the car near the roof, into which one edge of the card is slipped, and a divided molding attached to the roof and holding the other edge of the cards, which, however, were unsupported except along their edges."

The complainant's rack, as described in claim 2, consists of a back having a continuous concave face and longitudinal moldings connected by the back and rabbeted to form longitudinal grooves immediately adjacent to the concave face of the back, and detachable and adjustable elastic strips, F, adapted to be sprung into said grooves, and to cover the adjacent edges of the signs held in the rack. The curved face is designed to present the signs or advertisements clearly to the eye of the reader, and will also give a tasty appearance to the eye, and aid to keep the advertisements in place. The rabbeted longitudinal moldings are intended to and form grooves or spaces into which the ends of the cards are slipped, and by which they are mainly

held in place. The detachable and adjustable elastic strips, F, form no material part of this rack, except as they, when sprung into place, cover the side edges of the advertising cards in the rack, and tend to keep out dust, separate one card from another, assist to hold the cards in place firmly, and at the same time give the whole rack a more neat and attractive appearance. Nothing is said in this claim as to how the rack is to be attached to the car—whether nailed, screwed, glued, held by moldings independent of or even forming a part of the car, or absolutely built in by having its edges or sides so extended that, when attached to the car in any manner or by any means, the racks will form an integral part of the interior facing of the car itself. There is no necessity for having the rack removable easily or at all, as the cards may be placed therein as readily and perfectly when attached to the car by any means as when out of it or unattached.

It would seem idle to contend that, if this device or advertising rack contains sufficient merit to make it patentable, it is not infringed by a built-in rack of substantially the same construction and design as described in the patent, when used for the purpose described therein, and serving all the purposes of the patent. Can it be supposed that the inventor designed to limit his patent so that the patented article, when constructed, must be attached to the car by screws, or something in the nature of screws, or something that operates and is put in and taken out the same as screws, or in a similar manner as is a screw? Clearly not. It is "in [as described in claim 1] combination with screws or equivalent devices for connecting the rack to the car engaging with the moldings outside the grooves therein," etc. Pins, nails, hooks, or moldings, or plain boards properly fastened extending over the edges of the rack, and capable of being removed and replaced, would constitute "equivalent devices" for connecting the rack to the car. To this court the opinion of Judge Putnam is far more satisfactory than that of the Circuit Court of Appeals, and, when read with the two racks before one, seems absolutely unanswerable. This court is not bound by the decision of the Circuit Court of Appeals in the First Circuit, and feels justified in declining to follow it.

Again, the evidence is satisfactory that the "built-in" racks were within the terms of the license, and that it was so agreed and understood by the parties thereto. The defendants seem to have recognized and acquiesced in the validity of the complainant's patent as to both claims and as to "built-in" racks. This "built-in" rack of the defendants, constructed by them in street cars, and sold and used with and as a part of such cars, not only is of the same construction, but is wholly or partially fastened into the car by screws, and it accomplishes the same result as the other, and accomplishes such result by the use of the same elements in the same combination, and performs the same functions in precisely the same way. The combination of the elements used in the construction and attachment of these racks is new, not anticipated, and has proven exceedingly useful. This combination would not occur to the ordinary mind, but there is a display of inventive skill. Again, the defendant John H. Jones admits in his evidence that both these racks answer the same purpose,

but says they are differently constructed. They may be in some immaterial respects differently constructed, or, rather, attached, but in no material respect are they differently constructed. He also in words admits that both have identically the same elements—that is, a concave back, and the upper and lower moldings, each with a groove—and in the case of each rack the moldings and concave back are made fast in the car above the tops of the windows.

This court must hold, and holds, that the complainant's patent as to both claims was both new and useful, and is valid, and has been and is being used by defendants under such license, and complainant's patented advertising racks have been, since such license was granted, constructed and sold by defendants substantially continuously, and there are royalties due the complainant and unpaid. The defendants have refused and refuse to account for and pay royalties to the complainant for the card racks put into the cars constructed by them since August 8, 1889, of the kind, to wit, so-called "built-in" racks, on which they paid under the license $322 on or about that date. Clearly, complainant is entitled to an accounting, unless barred by laches.

This action can be maintained in equity because the license was granted, went into effect, and both parties recognized and acted under it. It could not be revoked or ended except by mutual consent. The defendants have never consented to its revocation. True, they say the patent was invalid, but this is not an assent to a revocation of the license. This license was exclusive. The defendants have not repudiated or given notice of a repudiation of the license except by the answer denying its existence. The defendants, under the facts of this case, are presumed to have constructed these racks under and in pursuance of the license. Holmes, Booth & H. v. McGill, 47 C. C. A. 296, 108 Fed. 244; Marston v. Swett, 66 N. Y. 211, 23 Am. Rep. 43; Id., 82 N. Y. 526; Lawes v. Purser, 38 Eng. L. & E. Rep. 48; White v. Lee (C. C.) 14 Fed. 789; Birdsall v. Perego, 5 Blatchf. 251, Fed. Cas. No. 1,435; Stott v. Rutherford, 92 U. S. 107, 23 L. Ed. 486; Eureka Co. v. Bailey Co., 11 Wall. 488, 20 L. Ed. 209; 3 Rob. Pat. 696, note 5. A license not expressly limited in duration continues until the patent expires or the license is forfeited, if not terminated by mutual consent. St. Paul Plow Works v. Starling, 140 U. S. 196, 11 Sup. Ct. 803, 35 L. Ed. 404; Hartell v. Tilghman, 99 U. S. 556, 25 L. Ed. 357. A royalty contract is not ended by a failure to pay royalties. White v. Lee (C. C.) 3 Fed. 222. This overrules Brooks v. Stolley, 3 McLean, 523, Fed. Cas. No. 1,962. It seems clear, therefore, that, unless barred by laches, the complainant is entitled to the relief demanded.

It is well settled that, independently of any statute of limitations, courts of equity uniformly decline to assist the person who has slept upon his rights, and shows no excuse for his laches in asserting them. A court of equity cannot be called into activity except where conscience, good faith, and reasonable diligence demand action. Speidel v. Henrici, 120 U. S. 377–390, 7 Sup. Ct. 610, 30 L. Ed. 718; Mackall v. Casilear, 137 U. S. 566, 11 Sup. Ct. 178, 34 L. Ed. 776; Hammond v. Hopkins, 143 U. S. 224–250, 12 Sup. Ct. 418, 36 L. Ed. 134;

Galliher v. Cadwell, 145 U. S. 368–371, 12 Sup. Ct. 873, 36 L. Ed. 738; Foster v. Mansfield, 146 U. S. 88, 13 Sup. Ct. 28, 36 L. Ed. 899. In Abraham v. Ordway, 158 U. S. 416, 420, 15 Sup. Ct. 894, 895, 39 L. Ed. 1036, the court said:

"Whether equity will interfere in cases of this character must depend upon the special circumstances of each case. Sometimes the courts act in obedience to statutes of limitations; sometimes in analogy to them. But it is now well settled that, independently of any limitations prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done in the particular case by granting the relief asked. It will, in such cases, decline to extricate the plaintiff from the position in which he has inexcusably placed himself, and leave him to such remedies as he may have in a court of law."

In the case at bar it is not seen that any injustice would be done the defendants should the relief demanded be granted. There has been no acquiescence in the claims of the defendants that the patent is invalid. The defendants have been reaping the benefit of complainant's patent, and conscience and good faith rather demand that they pay the lawful owner of the patent for the use made of same. As Randall, the patentee, could not be sworn as a witness, his excuse for not commencing action prior to his assignment to the complainant cannot be given. The defendants have not proved or offered to prove that Randall did not repeatedly demand settlement after January, 1890. Nor did the defendants show or offer to show that their conduct was not such as to excuse Randall for not bringing suit. There is no evidence that the defendants have been in any way misled by the failure to commence an action earlier.

This license was granted in the fall of 1888, and in August, 1889, the defendants made a payment of royalties. It is known and shown that Randall made a demand as late as January 4, 1890. December 26, 1895, Randall assigned the patent to the complainant, but the complainant had no knowledge or intimation of the outstanding license until the spring of 1900. In June of that year the complainant notified the defendants of the situation. June 20, 1900, the defendants replied thereto, and said:

"Replying to your favor of the 16th instant, we beg to say we have no report to make regarding the so-called Randall card rack, as we have not used any since the 20 lot you mention. The 161 cars, referred to in your letter, had the racks 'built in,' and we were very foolish to have paid Mr. Randall any royalty, and as we understand the matter now we hold that he is indebted to us in the sum of $322. We have went all through this card rack matter during the past few years, and understand it thoroughly. Awaiting your further pleasure, we are."

It thus appears that at this time the defendants took the position that, while they had paid royalties on built-in racks they were foolish to have done so, and gave notice that they would not pay further royalties. Not because no license was granted, not because they had not agreed to pay a license fee for such built-in racks, but because they claim the right to construct such built-in racks entirely independent of the complainant's patent and of the license. The complainant answers the letter above quoted on July 7, 1900, by filing the bill in this cause. In 1889 Randall wrote the defendants, "What is

the reason you did not put on this tag onto those advertising racks?" The defendants replied June 10, 1889: "It was an oversight of ours. Will see the balance have the tags." This shows a clear intention to use the patented invention. It is not improbable that the promise of defendant to put on the tags lulled Randall into confidence that the royalties would be paid. The defendants did not prove negligence on the part of Randall in not making proper efforts or securing due promises for an accounting and payment of royalties. Randall died in the winter of 1901. Randall's letters were in the possession of the defendants. The Jones letters showing the license and situation came into the possession of the complainant in the spring of 1900, and clearly no laches can be charged to the complainant in this action. Under all the circumstances of the case it cannot be said that the complainant cannot maintain this action because of the laches, if any, of Randall. Conscience, good faith, equity, and justice demand a decree from this court putting an end to the license, and directing the defendants to account to the complainant as demanded in the bill of complaint. No statute of limitations is in the way. The defendants' conduct in not accounting or paying royalties has not been induced by the conduct of the complainant, or of others interested, or of Randall. For these reasons this court will hold that laches does not defeat the complainant's right. Taylor v. Spindle Co., 22 C. C. A. 205, 206, 75 Fed. 301, and see note to such case at pages 211–219, 22 C. C. A. Also Gilmore v. Anderson (C. C.) 38 Fed. 848; Menendez v. Holt, 128 U. S. 524, 9 Sup. Ct. 143, 32 L. Ed. 526. There has been no acquiescence by the complainant or by Randall, and there must be something more than mere lapse of time to bar a claim for an accounting. See cases cited. If it were proved that the defendants had changed their position for the worse by reason of the alleged laches of Randall, and had put themselves in a position they would not have done had it not been for such delay, this court might, in the exercise of its discretion, hold such delay a bar to the equitable relief demanded; but nothing of that kind appears.

The result is that the complainant is entitled to a decree for an accounting as to all varieties of the advertising racks made and sold by the defendants, the royalty to be $3 per car on all racks made and sold before and after January 4, 1900, including built-in racks made and sold after that date, and also for a cancellation of the license, and for costs of the suit.