## BUCKINGHAM PRODUCTS CO. v. McALEER MFG. CO.

### No. 7942.

Circuit Court of Appeals, Sixth Circuit.
Dec. 12, 1939.

Rehearing Denied Jan. 10, 1940.

Stuart C. Barnes, of Detroit, Mich. (Barnes, Kisselle, Laughlin & Raisch, of Detroit, Mich., on the brief), for appellants.

Clarence B. Zewadski, of Detroit, Mich. (Whittemore, Hulbert & Belknap and Clarence B. Zewadski, all of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

SIMONS, Circuit Judge.

As in Westinghouse Electric & Manufacturing Company v. Formica Insu-

lation Company, 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316, the question in this case is the operation of the principle of estoppel and the character of defense to which the assignor of a patented invention is limited in a suit for infringement by the assignee, although we are here concerned with a patent issued before the assignor left the employ of the assignee. Since the assignor was continuously consulted during the prosecution of the patent application and the claims as issued definitely derive from the claims in the application, we are relieved of the difficult question that confronted the court in the Westinghouse case and in our recent case of Baldwin Rubber Company v. Paine & Williams Company, 6 Cir., 107 F. 2d 350, decided November 15, 1939, bearing upon the limits of an estoppel in the case of an assignment of an application, and so of an inchoate right to a patent, as compared with the limits of estoppel in the case of assignment of a granted patent. Where the applicant, though assigning his application to his employer, retains his position, cooperates in the prosecution of the application, and so has opportunity to define precisely his invention and control claims finally allowed, there would seem to be no reasonable ground for differentiating between the limits of an estoppel growing out of an assigned application and those arising from a granted patent.

The court in Westinghouse Electric & Mfg. Company v. Formica Insulation Company, supra, upon a careful review of Circuit and District Court decisions in addition to those of the Circuit Courts of Appeals, announced the conclusion that an assignor of a patent right is estopped to attack the utility, novelty or validity of a patented invention which he has assigned, as against anyone claiming rights under his assignment or grant. As to the rest of the world, the patent may have no efficacy and create no right of monopoly; but the assignor cannot be heard to question the right of his assignee or to exclude him from its use. This conclusion is not challenged, but it is asserted that there are present in the instant controversy, circumstances which make it inequitable to apply the rule, though conceded that no case has been found which parallels the present situation. Reliance is placed upon the observation of this court in the Formica case, 6 Cir., 288 F. 330, 333, to the effect that since estoppels forbid one to speak the truth, technical estoppels are not favored. We are, in addition, urged to consider the rationale of the cases which emphasize the public interest present in every patent controversy, to the end that the facts pointing to the infirmity of the patent claims be considered, New Departure Bell Company v. Corbin, C.C., 88 F. 901; Standard Water Systems Company v. Griscom-Russell Company, 3 Cir., 278 F. 703, 705; Colorado Tent & Awning Company v. Parks, 8 Cir., 195 F. 275; Premier Machine Company v. Freeman, 1 Cir., 84 F.2d 425; Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U. S. 464, 55 S.Ct. 449, 79 L.Ed. 997.

In view of these contentions it becomes necessary to consider the character of the invention, the circumstances under which the patent issued, and the relation of the parties. The patent is No. 1,965,299, for an "Abrading and Polishing Composition," issued July 3, 1934, to the McAleer Company, upon the application of appellant Patterson. The invention, as defined by the claims, is expressed in formulae for wheel polishing compounds of which claim 1, printed in the margin,[1] is typical. The compound is a paste-like substance composed of a finely ground abrasive mixed in an emulsion which is made of so-called volatile and non-volatile immiscible liquids with an emulsifying agent present. It is used principally in polishing lacquer finishes on automobile bodies. The compound is spread on the newly painted surfaces which are then polished with a polishing wheel consisting of a power-rotated disc covered with sheepskin or other polishing pad. The compound serves to cut from the surface of the lacquered body, all irregularities, leaving it smooth and with high polish. A compounded paste will dry out and fly from the revolving wheel after the polishing is completed, so when power wheels

---

[1] An abrading and polishing composition comprising abrasive particles and an emulsion which holds the composition cohesively together, said emulsion containing volatile materials and non-volatile ingredients selected from any of the hydrocarbons, vegetable oils, waxes, fatty acids, soaps, sulphonated oils, glycerine, soluble oils, or free alkylolamines, said non-volatile materials being less in quality than the absorptive power of said abrasive particles for said non-volatile materials, so that when the volatile material evaporates, the abrasive particles will no longer be held together by cohesion.

were introduced the old hand polish was found unsatisfactory since it contained too much oil and "gummed up" the polishing pad, but with a proper wheel compound the non-volatile materials are completely absorbed by the abrasive, and when the volatile liquid, such as oil or water, evaporates due to the heat produced by friction, the abrasives will still carry the non-volatile liquids. If, however, the non-volatile matter is beyond the absorption capacity of the abrasives, the surface will be left smeared, and the pad gummed. Polishing compounds to be applied by power wheels, were first developed as early as 1928 or 1929, at the Du Pont de Nemours plant at Flint, Michigan, and successful combinations were usually arrived at by the cut and try method to determine the proper proportions of their constituent elements.

Patterson had been a chemist with the Du Pont de Nemours-Company and entered the employ of the McAleer Company in 1929. At that time McAleer had no successful wheel polishing compound but had been, conducting experiments. Patterson had assisted in developing a compound designated as K-38, and others of similar character, in cooperation with one Maurice German, likewise a former Du Pont chemist. These compounds were used at the Checker Cab Company plant in Kalamazoo in 1930, and later by the Fisher Body Company. They have been in use ever since. The K-38 formula appears in the patent in suit as one of the examples illustrating the invention. Compound to the extent of millions of pounds responding to K-38 has been sold by the McAleer Company, its manufacturer.

Apparently no effort was made to protect the German-Patterson formulae, until subsequent to the discharge of German in 1933 when he became associated with a competing company. In July of 1933 McAleer consulted a patent attorney in Detroit as to the possibilities of securing patent protection for his products. He was advised against making application because of the large quantities that had been sold over a period of five or six years preceding. Nothing further was done until December, 1933, when Weihe, Jr., a chemist in McAleer's employ, whose father had been connected with the patent office for a number of years as examiner and was then associated with a firm of patent counsel in Washington, undertook to secure a patent.

Patterson prepared the description, signed the patent application, and executed thereafter a power of attorney to Weihe, Sr., at Washington. The application was then assigned to the McAleer Company.

Appellant Buckingham was connected with the McAleer Company when the patent application was filed, and throughout its prosecution from February 27 to July 3, 1934. He had opposed its filing because of prior use and thought it unwise to seek a patent which might prove to be invalid. About the first of December, 1935, Buckingham left the McAleer Company and formed the Buckingham Products Company, now one of the appellants. On December 15, 1935, Patterson left the McAleer Company and became associated with the Buckingham Products Company. Subsequently, Anstee also left McAleer and joined Buckingham. At the time of suit and trial, Buckingham, Patterson and Anstee were directors of the Buckingham Corporation and its executive officers, Buckingham being president, Patterson, secretary, and Anstee, treasurer. The three owned 1,500 of its 3,000 shares, the remaining 1,500 shares being owned by John R. Hackett of Chicago. Patterson was its chief chemist.

It is agreed that the Buckingham Products Company was not organized for the purpose of making use of the patented formulae, and the District Judge, upon evidence which sustains his findings, absolved all parties of bad faith. However, in 1936, prompted, it is said, by price-cutting on non-infringing items, instituted by the McAleer Company, Buckingham commenced the manufacture of compounds alleged to infringe, and, if the claims are to be interpreted literally, the appellants concede infringement. They say, however, that since the specification indicates a preferred limit for non-volatile elements between 25 and 50 per cent of the total possible absorption of the abrasive, that if this limitation is read into the claims, there is no infringement. The court below rejected this contention. It is not now seriously pressed upon us and we give it little consideration. Patterson sought the broader claims and, insofar as he cooperated with his assignee in pursuit of the application, accepted those that were allowed. Neither he nor those in privity with him may now be heard to say that his invention is narrower than what is plainly indicated by the claims, and

so escape the charge of infringement under the rule of the Formica case.

■ Likewise must we reject the contention that the Patterson assignment to McAleer was without consideration, based on failure to pay the nominal consideration named in the agreement, and lack of obligation on his part under his employment contract to assign. Patterson was McAleer's chief chemist, receiving for his services a substantial salary. The formulae covered by the patent were developed in the McAleer plant and upon his employer's time. Their preparation was his chief duty, and one of the things for which he was employed. He continued in the employment of McAleer for a year after the assignment, and no question was ever raised as to its validity until he was sued for infringement four and one-half years later.

■ The principal argument against the application of the rule of estoppel to the appellants, is the inequitable conduct of the McAleer Company in seeking patent protection for the Patterson compounds after having been advised by patent counsel that their use for more than two years prior to the application would invalidate the patent and the concealment of this use from the patent office. This, it is said, constitutes a legal fraud, and should preclude the granting of equitable relief for infringement. It is conceded that in the usual infringement case, fraud is not a defense available to the infringer since a patent is a contract between the patentee and the government and may be set aside only at the suit of the government to cancel the patent. Carson Investment Company v. Anaconda Copper Mining Company, 9 Cir., 26 F.2d 651; Western Glass Company v. Schmertz Wire Glass Company, 7 Cir., 185 F. 788; Vortex Manufacturing Company v. Ply-Rite Contracting Company, D.C., 33 F.2d 302; Eureka Clothes Wringing Machine Company v. Bailey Washing & Wringing Machine, 11 Wall. 488, 78 U.S. 488, 20 L.Ed. 209. Though it is not said by the appellants that they may defend on the ground of invalidity because of fraud, it is urged that the inequitable conduct of McAleer should defeat its right to invoke the rule of estoppel.

■ It must be remembered, however, that the technical man in charge of all compounds for McAleer, was Patterson. He prepared the formulae; he drew up their descriptions; he assisted and advised in the preparation of the specification; signed the patent application and assisted in its prosecution. While all parties were found by the court below to have acted in good faith, yet if there were fraud, actual or constructive, Patterson participated, if indeed he were not its motivating force, and the principle universally applied, is not here to be avoided, that one may not profit by his own fraud.

■ Patterson seeks to vindicate himself by explaining that while the K-38 compound, made for five or six years by McAleer, was within the dry limit, yet until shortly before he filed the application he had not yet established the upper dry limit, and that it had taken four or five years to ascertain the scientific principle by which the compound could be made other than by cut and try methods. This explanation was rejected by the District Court since a scientific principle is not patentable, and so its discovery could not avoid invalidity due to prior use. We agree. It is inconceivable that Patterson was unaware that prior use, if disclosed to the patent office, would defeat his application. His failure to rely upon discovery of a scientific principle in his application, proclaims his knowledge that it was unpatentable.

■ We are strongly urged to set aside the decree insofar as it enjoins Buckingham and the Buckingham Products Company from infringing the patent claims. Patterson and Buckingham, it is asserted, are not in control of the Buckingham Company since they do not own a majority of its shares, Anstee owning 250 and Hackett 1,500. Anstee was, however, a former employee of McAleer and associated with Buckingham and Patterson in that company. While Patterson and Buckingham alone, or together with Anstee, do not have voting control of the corporation, they constitute its management and dictate its policy. Patterson is its chief chemist and Buckingham and the corporation are the beneficiaries of his technical knowledge. It would be mere futility to enjoin Patterson and permit infringement by the corporation to continue, and so permit Buckingham to profit thereby. They are, under present circumstances, privies to Patterson's infringement whether we hold the corporation to be the alter ego of Patterson, or do not so hold. The better reasoned cases are in accord. Pllee Company v. Raskin, D.C., 194 F. 440; Mellor v. Carroll, C.C., 141 F. 992; Siemens-Halske Company v. Duncan

Company, 7 Cir., 142 F. 157. The present case is distinguishable from Remington-Rand, Inc., v. Mastercraft Corp., 6 Cir., 67 F.2d 218, in that here the active member of the cooperating group was the applicant for the patent.

The decree below is affirmed.