**DEER PARK SPRING WATER, INC., Plaintiff,**

v.

**APPALACHIAN MOUNTAIN SPRING WATER CO., et al., Defendants.**

No. 89 Civ. 4029 (MJL).

United States District Court, S.D. New York.

April 15, 1991.

Davis, Hoxie, Faithfull & Hapgood by John B. Pegram, Peter Bucci, Brandon N. Sklar, New York City, for plaintiff.

Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele & Richard by Virginia R. Richard, Maribel Figueredo, New York City, for defendants.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court are defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment under Fed.R.Civ.P. 56, along with defendants' motions to strike (1) plaintiff's motion for summary judgment, (2) certain of plaintiff's counterstatements of fact pursuant to Local Civil Rule 3(g), and (3) certain evidence submitted in support of the counterstatements and plaintiff's motion. For the reasons given below, all motions are denied.

## BACKGROUND

The plaintiff, Deer Park Spring Water, Inc., is engaged in the business of bottling and selling spring water, and is the owner of water rights to certain underground springs located in Garrett County, Maryland, known as "Boiling Springs". Combined Statements 6, 7.[1] Plaintiff purchased these rights in 1985, along with rights to the name "Deer Park"[2] and a deer's head logo, which have been used to market bottled water from the springs for many years and in particular since the early 1970s. *Id.* at 26–30.[3] Since 1985, plaintiff has extracted, bottled and sold water from the Deer Park springs, using the brand name "Deer Park" and a deer's head logo to label its containers.[4] *Id.* at 10, 11. Its current practice is to bottle, under this label, water extracted from the Deer Park springs and from two springs in Pennsylvania. *Id.* at 7.

Defendant Appalachian Mountain Spring Water Co.[5] is also engaged in the business of bottling and selling spring water, which it markets in several of the same states as

---

1. Citations herein are to "Material Facts as to Which There Is No Dispute[:] Defendants' Statement Pursuant to Local Rule 3(g) with Counterstatements by Plaintiff". Defendants' objections to certain of plaintiff's counterstatements of fact are discussed below.

2. "Deer Park" refers to the Maryland town in or near which the springs are located. *See id.*

3. We find that defendants have conceded for the purposes of their motion for summary judgment that plaintiff owns the trademarks in question in this case. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 10.

4. The deer's head logo has, since 1972, been the subject of a federally registered trademark (U.S. Pat. No. 940,567). Combined Statements 8. The words "Deer Park" for bottled water were also the subject of a federal trademark (No. 853,300) from July 1968 until July 1988, when the registration lapsed. *Id.* In August, 1990, plaintiff apparently received a new trademark registration (No. 1,609,254) for "Deer Park" for bottled water. *Id.;* Letter of Brandon Sklar dated September 4, 1990.

5. Appalachian is organized as a limited partnership. The other named defendants are its general partners. Combined Statements 3–5. Defendants will be referred to collectively as "Appalachian" herein except where specification is necessary to avoid confusion.

plaintiff does its product. *Id.* at 12. Among Appalachian's principals is Rutledge Bermingham, who in 1966 was involved in the original purchase from the B & O Railroad of the water rights to the Deer Park springs by one of plaintiff's predecessors. *Id.* at 33. That predecessor bottled and sold spring water under the Deer Park label from 1967 to 1972. *Id.* at 34. It also obtained the original federal trademark registration for the deer's head logo, rights to which were purchased by the plaintiff in 1985. *Id.*

In 1988, Boiling Spring Holding Corporation, a co-defendant in this action,[6] purportedly purchased from the B & O certain limited water-use rights to the Deer Park springs which the railroad had retained in the 1966 sale.[7] Also in 1988, Appalachian, in which BSHC is a general partner, began marketing and selling bottled spring water under the name "Appalachian Mountain Spring Water". *Id.* at 13–16. The present suit focuses on a set of two labels used on Appalachian's spring water bottles in 1988 and 1989. *Id.* at 15. One label, placed on the neck of the bottle, bore a deer's head logo and carried the following inscription:

> Pure spring water bottled at the source on the crest of the Alleghenies in the glades of Western Maryland, at Deer Park/Mountain Lake Park.**R**[8]

*Id.* A lower label carried, in small ordinary print, a further description of the product; it said, *inter alia,*

> Bottled from the Natural Springs sources Backbone Mtn. Western Maryland; Boiling Spring Deer Park/Mountain Lake Park/Municipal Supply.... Backbone Water Co. L.P.

Deer Park/Mt. Lake Park, MD 21550 ... [*sic*].

*Id.* Since July 1989, Appalachian's labels have carried only this last small-print reference to Deer Park; the current neck label on Appalachian spring water has no reference to Deer Park and no logo. *Id.* Indeed, Appalachian's statements of undisputed fact filed in support of its motion for summary judgment indicate that it has "ceased all use of a deer head design in connection with their Appalachian Mountain Spring Water product and ha[s] advised plaintiff that [it] will not resume use of said design in connection with that product." *Id.* at 24. The labels on Appalachian's shipping cartons have also, since 1988, carried the words "Deer Park" in three places. *Id.* at 16.

Plaintiff's complaint challenges Appalachian's right to use the words "Deer Park" and a deer's head logo on its labels, alleging trademark infringement, false designation of origin and various other violations of federal and state statutory and common law. Appalachian seeks, *inter alia,* a declaratory judgment that it may use "Deer Park" to describe the origin of its water.[9]

## DISCUSSION

Appalachian now moves for summary judgment, primarily on the ground that its current use of the words "Deer Park" is permissible as a designation of the geographic origin of its spring water, under the doctrine of "fair use" codified in section 33(b)(4) of the Trademark Act of 1946 ("the Lanham Act"), 15 U.S.C. § 1115(b)(4).[10] Appalachian also argues

---

6. Rutledge Bermingham is a principal of this corporation, which is a general partner in Appalachian (see footnote 4 above).

7. Ownership of these rights, which would permit Appalachian to extract 7,500 gallons per day from the Deer Park springs, is the subject of litigation currently pending between the present parties in a Maryland state court. *See* Combined Statements 33–47.

8. Appalachian admits that its use of the **R** symbol on this label was improper, since the label contained no registered trademark material. Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 14.

9. Appalachian's request for injunctive relief barring plaintiff's use of the **R** symbol for the words "Deer Park" after the lapse of plaintiff's trademark registration is, now that plaintiff has received a new registration, moot.

10. Appalachian apparently seeks to have only its current labels considered under the fair use doctrine, whereas plaintiff seeks to have Appalachian's use considered "as a whole". In deciding the present motions, this Court has considered both the issue of whether Appalachian is entitled to *any* use of the words "Deer Park" on its labels, and that of whether its 1988–89 labels, if revived, would constitute a fair use.

that plaintiff has not offered sufficient evidence as to various elements of its *prima facie* case.[11] Plaintiff cross-moves for summary judgment on the ground that, as a matter of law, the fair use defense does not apply to any of Appalachian's labels. Finally, Appalachian moves to strike plaintiff's cross-motion, along with certain of its Rule 3(g) counterstatements and supporting evidence. We will consider the motions to strike first.

### I. Appalachian's Motions to Strike

■ Appalachian initially moves to strike plaintiff's cross-motion for summary judgment, on the grounds that it failed to append a statement of undisputed facts as required by Local Civil Rule 3(g). Plaintiff argues, in essence, that Rule 3(g) does not directly address the proper method for filing such statements in a case where both sides have moved for summary judgment. The method plaintiff used, re-filing Appalachian's statements of undisputed fact with "counterstatements" by plaintiff as to certain fact issues, was a practical and reasonable accomodation of the Rule's purpose.

■ For similar reasons we reject Appalachian's argument, in moving to strike certain of plaintiff's counterstatements, that the counterstatements are "not responsive" to Appalachian's original statements. Plaintiff's assertions of fact in this context function not merely to oppose Appalachian's summary judgment motion, but also to support plaintiff's own motion. In such circumstances, plaintiff need not limit itself to "responding" to defendant's statements.

Appalachian argues further that certain of plaintiff's counterstatements should be stricken as unsupported by admissible evidence of record and because they raise issues outside the scope of the motions for summary judgment.[12] Concurrently, Appalachian moves to have stricken certain declarations filed by plaintiff in support of its motion, along with certain exhibits filed therewith, on the grounds that they were not based upon the personal knowledge of the declarant and that they otherwise include inadmissible evidence.[13]

In reaching a decision on the motions for summary judgment, this Court does not rely upon the contested portions of counterstatements 8, 10, 15, 16, 19, 20, 23, or 25, or the declarations and exhibits offered in support thereof, and thus need not decide whether they were properly submitted. Counterstatements 11B, 31, 47, 50, 51, 53–55, and 59B are relevant to the issue of Appalachian's good faith use of "Deer Park" solely as a geographic designation, as discussed below. In addition, the latter group of counterstatements is sufficiently supported by admissible evidence submitted by plaintiff, including the testimony of Rutledge Bermingham and defendants' own internal documents, for this Court to rely upon it in deciding the present summary judgment motions. Therefore, defendants' motions to strike are denied.

### II. Appalachian's Motion for Summary Judgment

#### A. *The Infringement Claim*

■ Count I of plaintiff's complaint alleges that Appalachian's use of a deer's head logo on its bottled spring water labels violated section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).[14] Section 32(1) makes

---

**11.** These latter arguments appear first in Appalachian's Reply and Opposition Memorandum. In finding below that summary judgment on this basis is inappropriate, the Court does not consider whether the issue was properly presented.

**12.** Specifically, Appalachian seeks to have stricken plaintiff's counterstatements numbered 8, 10B–G, 11B, 15, 16, 19, 20, 23, 25, 31, 47, 50, 51, 53, 54, 55, and 59B.

**13.** More specifically, Appalachian seeks to have stricken portions of the declarations of L. Webster Dyer (and Exhibits 1–3 attached thereto),

Jayne Fitzmartin (and Exhibits 8–10 and 12–14), Charles Norris (and Exhibits 4–6), Brandon Sklar, and Marcella Scalia (and Exhibit 7).

**14.** The complaint does not assert a section 32(1) infringement claim as to the words "Deer Park". Thus, we need not consider what effect the lapse of plaintiff's trademark registration would have upon such a claim (see footnote 3 above). As noted above, Appalachian has, at present, ceased using the deer's head logo. However, no evidence has been offered to show that plaintiff has an enforceable agreement precluding future use; thus the issue of Appalachian's right to use a deer's head must be considered not moot.

it unlawful to "reproduce, counterfeit, copy, or colorably imitate a registered mark" in a manner "likely to cause confusion, or ... mistake, or to deceive." 15 U.S.C. § 1114(1)(b). Appalachian does not dispute that at all times material hereto the deer's head logo was a "registered mark", and thus that plaintiff has a protectible property interest therein. Rather, Appalachian argues that plaintiff has adduced insufficient evidence on the issue of likelihood of confusion among consumers resulting from the appearance of the labels.

■ However, a jury could reasonably conclude that such confusion was likely. It is undisputed that there is a high degree of "competitive proximity" between plaintiff's and Appalachian's products. *See Centaur Communications Ltd v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1226 (2d Cir.1987). Moreover, there is an obvious similarity between the two deer's head symbols, especially as they appear on virtually identical products. Thus, this is not a case in which the products and/or labels in question are so obviously dissimilar as to make consumer confusion unlikely as a matter of law. *Cf. Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112 (2d Cir.1984); *Harvey Cartoons v. Columbia Pictures Industries, Inc.*, 645 F.Supp. 1564 (S.D.N.Y.1986); *Riverhead Paints Plus, Inc. v. PPG Industries, Inc.*, 2 U.S.P.Q.2d (BNA) 2035, 1987 WL 16877 (E.D.N.Y. 1987). Plaintiff need not produce evidence of *actual* confusion in order to succeed at trial, as Appalachian seems to contend. *Centaur Communications*, 830 F.2d at 1227. Given a genuine dispute of fact as to the likelihood of confusion, summary judgment for Appalachian on the infringement claim is inappropriate.[15]

**B.** *The False Designation Claim*

■ Count II of the complaint alleges that Appalachian's use of the deer's head logo and the words "Deer Park" on its labels would violate section 43(a) of the Lanham Act, which proscribes false designation of a product's origin. 15 U.S.C. § 1125(a). This section gives federal protection even to unregistered trademarks where plaintiff can show that it has a protectible interest in the mark and that consumer confusion is likely. *Centaur Communications*, 830 F.2d at 1220–21. As noted above (see footnote 2), Appalachian has conceded for the purposes of its motion that plaintiff is the owner of the "Deer Park" mark.[16]

Appalachian primarily relies upon the argument that its current use of the words "Deer Park" on its labels is, as a matter of law, an exempted "fair use" under Lanham Act section 33(b)(4).[17] In particular, Appalachian argues that it should be permitted to list Deer Park as the geographic origin of its water. Under this theory, Appalachian's burden is to demonstrate at trial that (1) the labels used the words "Deer Park" "otherwise than as a mark"; (2) the words were "descriptive of ... [the] geographic origin [of Appalachian's product]"; and (3) the words were used "fairly and in good faith *only* to describe" the product's origin. Lanham Act § 33(b)(4); 15 U.S.C. § 1115(b)(4) (1988) (emphasis added).

Plaintiff argues that Appalachian is not entitled to *any* use of the words "Deer Park" because they do not fairly and in good faith—or even in fact—describe the geographic origin of its water. In essence, plaintiff argues that each of Appalachian's asserted justifications for using "Deer Park" on its labels is a pretext for infringement of plaintiff's mark. In an effort to

---

**15.** Appalachian does not seriously advance the argument that its use of the deer's head logo would be protected by the "fair use" defense discussed below, and we do not address that issue.

**16.** Moreover, as discussed below, Appalachian is barred from contesting the validity of plaintiff's trademark under the doctrine of assignor estoppel.

**17.** Under this section, a "fair use" is "a use, otherwise than as a mark, ... of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4) (1988). Plaintiff does not dispute that fair use would be a complete defense to all its claims against Appalachian.

impeach these justifications, plaintiff seeks to show that (1) Deer Park is not recognized as a separate postal district or a proper mailing address by the United States Post Office; (2) no applicable state labelling law for bottled water requires Appalachian to include the words "Deer Park" on its labels; (3) in fact, little or none of Appalachian's water comes from the Deer Park springs, and none is bottled there; and (4) the springs themselves are not actually located within the town of Deer Park, but are part of some other legal entity of the state of Maryland.[18]

These contentions raise a genuine dispute of fact as to Appalachian's good faith in using "Deer Park" as a geographic designation on any of its labels, past or present. Therefore, summary judgment for Appalachian on the fair use defense is inappropriate. Defendants' Rule 56 motion is denied in its entirety.

### III. Plaintiff's Cross–Motion for Summary Judgment

Conversely, Plaintiff is not entitled to summary judgment barring Appalachian's use of "Deer Park" and/or the deer's head logo on its labels. While there is some evidence to suggest the likelihood of consumer confusion, particularly as to the 1988–89 labels, the evidence is not overwhelming. *Cf. Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir.1986). Nor do we accept plaintiff's argument that Appalachian is barred as a matter of law from asserting the fair use defense, either under the doctrine of as-

signor estoppel or because Appalachian's use created a likelihood of consumer confusion.

### A. *Assignor Estoppel*

■■■ Plaintiff contends that the doctrine of assignor estoppel should prevent Appalachian, as a matter of law, from relying upon the fair use defense in this case. In *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed.Cir.), *cert. dismissed*, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 978 (1988), the Court described assignor estoppel as "an equitable doctrine that prevents one who has assigned the rights to a patent ... from later contending that what was assigned is a nullity."[19] Even assuming the doctrine applies with equal force in trademark cases, however, it does not preclude Appalachian from asserting the fair use defense in this case.

Plaintiff relies on *Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*, 903 F.2d 789, 794–96 (Fed.Cir.1990), in which the Court held that assignor estoppel would bar the defendant in a patent infringement case from asserting the equitable defense of "inequitable conduct" by the patent holder. To permit use of the defense, the Court reasoned, would mean that *"Diamond Scientific* could be avoided by merely couching invalidity defenses in terms of inequitable conduct...."* *Id.* at 795. In the present case, by contrast, Appalachian seeks to use the fair use defense not to attack the validity of plaintiff's trademark, but to defend its own use as

---

**18.** In addition, plaintiff argues that the "secondary meaning" of the words "Deer Park" created by its marketing efforts has eclipsed any ordinary geographical or historical meaning the words might ever have had to consumers. One author has described the concept of secondary meaning as follows:

> Certain words, when used in their ordinary primary sense, cannot be exclusively appropriated by anyone.... However, if a word of this type is used technically as a trademark or service mark and the word over a period of time becomes associated in the minds of the public with the particular user—that is, if it becomes distinctive and acquires a secondary meaning—the owner of the mark is usually in a position ... to prevent others from making a technical use of the word as a trademark or service mark.

R. Nordhaus, Patent, Trademark and Copyright Infringement, § 54 at 102 (1971).

**19.** Appalachian insists that assignor estoppel is inapplicable to the present defendants, corporate entities created after 1985 and thus not involved in any assignment of rights to plaintiff or its predecessors. However, assignor estoppel "also operates to bar other parties in privity with the assignor, *such as a corporation founded by the assignor." Diamond Scientific*, 848 F.2d at 1224 (emphasis added). By the same token, the doctrine logically extends to the defendants in the present case, by virtue of Rutledge Bermingham's past role in assigning the "Deer Park" mark and present status as principal of defendants.

**68**

reasonable and non-infringing *despite* the mark's validity. In other words, Appalachian does not seek to argue "that what was assigned is a nullity." *Diamond Scientific, supra.* As such, assignor estoppel does not apply.

### B. *Consumer Confusion*

 This district has held that "[t]he 'fair use' defense does not encompass use that will lead to consumer confusion as to the source or origin of the goods at issue." *E.g., Cullman Ventures, Inc. v. Columbian Art Works, Inc.,* 717 F.Supp. 96, 134 (S.D.N.Y.1989). Plaintiff argues that Appalachian's use was likely to result in consumer confusion, thus barring it from relying on the fair use defense. However, as discussed above, there is a genuine dispute of fact as to the likelihood of consumer confusion resulting from Appalachian's labels. Given this dispute, we cannot say as a matter of law that Appalachian would be precluded from asserting the fair use defense. For the above reasons, plaintiff's cross-motion for summary judgment is denied.

It Is So Ordered.